G. ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; ALEJANDRO RIVERA MOLINA, Claimant.

No. 310.   Argued April 10, 1944.—Decided May 29, 1944.

M. *Rodríguez Ramos*, Acting Attorney General, *G. Benítez Gautier*, Deputy Attorney General, and *Joaquina Pérez Cordero, Angel de Jesús Matos, J. Correa Suárez* and *A. Sandín del Manzano*, Legal Advisers of the State Fund, for petitioner. *J. Padilla Ginorio* for claimant.

Mr. Justice de Jesús delivered the opinion of the court.

On June 8, 1943, Alejandro Rivera Molina, in the course and as a consequence of his employment in cutting cane, suffered a superficial injury on the back of his left hand. Doctor Marqués, who was the first to attend to him, was of the opinion that the wound should be healed in three weeks. He treated him on several occasions, noticing on one of them that an ulcer had formed in the wound. He applied a medicine that, according to him, should not cause any inflammation or irritation. On noticing that the ulcer did not heal, and suspecting that the workman was malingering, he sent him to the State Insurance Fund, and he was thereupon hospitalized in the San Ildefonso Clinic. He was there attended by Dr. Comas, who discharged him on October 1943, restored to health and with no disability whatsoever in the hand. Some time later the workman returned to the State Insurance Fund, and was there examined by Dr. Molinari, who found that he had a disability equivalent to the loss of eighty-five per cent of the physiological functions of the hand, since he was unable to contract his fingers. Doctor Molinari, however, informed the manager that the disability was neither a direct or indirect consequence of the accident, but the result of the workman's malicious nonuse of the fingers by keeping them in hyperextension for a long period of time. Knowing Doctor Molinari's report, the workman appealed to the Industrial Commission before the manager had rendered his ruling. In order to abbreviate the proceedings, the manager did not apply for the dismissal of the ap-

peal as premature, but assumed that his ruling would be the same as Dr. Molinari proposed in his report. There followed a public hearing before the Chairman of the Commission. Several doctors testified for the manager, and Dr. Cordero, as well as the workman himself, testified for the latter. With the exception of Dr. Cordero, the doctor of the commission and the other doctors testified that neither the wound or the ulcer had affected the tendons of the hand, and that consequently the disability was due exclusively to the fact that the workman had maliciously kept the fingers in hyperextension for a long period of time with the purpose of rendering the hand useless, as actually happened. Doctor Cordero's testimony is rather obscure, but, in brief, it does not concur with that of his colleagues who testified for the manager.

The chairman delivered an opinion denying the compensation on the ground that the workman's disability was neither a direct or indirect consequence of the wound suffered by him in the course of his employment. Commissioner Paz Granela delivered a dissenting opinion, contending that the disability of the hand should be attributed to the wound suffered in the course and as a consequence of his employment, since the workman's hands were in perfect condition before he suffered the injury, and the manager had not introduced any direct evidence to support his argument that the workman had intentionally kept the fingers of his hand in hyperextension. Commissioner Herrero concurred in the dissenting opinion, which thus became the opinion of the majority. At the hearing the workman testified that he had not malingered, but the commissioners of the majority did not see or hear him testify, nor did the experts of both parties. Since a disagreement existed between the experts of the parties, the behavior of the workman on the witness stand could have been decisive in deciding the conflict in the expert testimony, since had he shown by the way in which he testified

that he was not telling the truth in affirming that he had not malingered, credit should necessarily be given to the testimony of those experts who affirmed that the disability of the hand was solely due to the illegal acts of the workman.

██ The error committed by the commissioners of the majority, on requiring that the manager should have introduced direct evidence by way of somebody who had seen the workman malinger, is obvious. Were that kind of evidence to be required, a malicious interference could be proven in very few cases, since the workman who practices it naturally does not commit the illegal act in the presence of somebody who might expose him. The existence of the interference can be established by expert testimony and the surrounding circumstances. It is true that as a legal matter the other commissioners are not compelled to accept the conclusion of fact reached by the commissioner before whom the evidence is introduced. *Atiles, Mgr.* v. *Industrial Commission,* 63 P. R.R. 60. But the error pointed out having being committed, and there being a disagreement regarding the appraisal of the expert testimony, the case of *Ortiz* v. *Industrial Commission,* 58 P.R.R. 279, is applicable:

"We do not believe that the commissioners who did not have the opportunity of being present at the public hearing must necessarily accept the appraisal of the evidence made by the one before whom it was held, but it is indisputable that those who did not hear or see the witnesses testify do not have the same advantages to appraise and decide the credibility of the witnesses as the one before whom the case was heard."

The ruling appealed from should be reversed, and the case remanded to the Industrial Commission so that a new hearing may be held before the commission in full and the pertinent decision be rendered according to the law and the preponderance of the evidence.

Mr. Chief Justice Travieso did not participate herein.